**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA )
ex rel. RICHARD GREEN )
 )
STATE OF GEORGIA )
ex rel. RICHARD GREEN )
 )       Case No. _____
        Plaintiff-Relator, )       **JURY TRIAL DEMANDED**
 )       **FILED UNDER SEAL**
v. )
 )
AMERICAN CARE SPECIALTY, LLC )
d/b/a KILLIAN HILL PHARMACY; )
KILLIAN HILL PHARMACY, LLC d/b/a )
KILLIAN HILL PHARMACY; )
SACHINKUMAR PATEL; NEIL PATEL; )
DHAVAL PATEL; PLUS ONE SPECIALTY )
LLC d/b/a CHOICE SPECIALTY )
PHARMACY; NEWNAN PLAZA )
PHARMACY; SOUTHSIDE PHARMACY; )
EXPRESS FOOD AND PHARMACY 1; )
EXPRESS FOOD AND PHARMACY 2; )
EXPRESS FOOD AND PHARMACY 3; )
EAGLE PHARMACY; PRESTIGE )
PHARMACY; FAMILY PHARMACY; )
JOHN DOE PHARMACIES 1-20; JOHN )
DOE PRIOR AUTHORIZATION )
COMPANY; WRASER, LLC d/b/a )
WRASER PHARMACEUTICALS; and )
SCILEX HOLDING COMPANY d/b/a )
SCILEX PHARMACEUTICALS, INC., )
 )
        Defendants. )

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Relator Richard Green ("Relator") brings this action on behalf of himself, the United States of America, and the State of Georgia against Defendants American Care Specialty, LLC d/b/a Killian Hill Pharmacy; and Killian Hill Pharmacy, LLC (collectively "Killian Hill");  Sachinkumar Patel ("Sam Patel"); Neil Patel; Dhaval Patel; Plus One Specialty LLC d/b/a Choice Specialty Pharmacy; Newnan Plaza Pharmacy; Southside Pharmacy; Express Food and Pharmacy 1; Express Food and Pharmacy 2; Express Food and Pharmacy 3; Eagle Pharmacy; Prestige Pharmacy; Family Pharmacy; John Doe Pharmacies 1-20; and John Doe Prior Authorization Company (collectively, including Killian Hill, the "Pharmacy Defendants"); and WraSer, LLC d/b/a WraSer Pharmaceuticals; and Scilex Holding Company d/b/a SCILEX Pharmaceuticals, Inc. (collectively, the "Drug Manufacturer Defendants") for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and of the Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168.1 *et seq.* (collectively, the "False Claims Act").

2.      The Pharmacy Defendants submitted or caused to be submitted false claims for reimbursement to the Medicare, Medicaid, and TRICARE programs for prescription drugs that were not dispensed to patients.

3.      The Pharmacy Defendants submitted or caused to be submitted false claims

for reimbursement to the Medicare, Medicaid, and TRICARE programs that were tainted by kickbacks—including copayment waivers for the beneficiaries and free services provided to the prescribing providers.

4.      The Pharmacy Defendants submitted or caused to be submitted false claims for reimbursement to the Medicare, Medicaid, and TRICARE programs where the prescriptions and coverage were obtained via the submission of false records and statements.

5.      The Drug Manufacturer Defendants were aware of the defendant pharmacies' improper actions, and yet they encouraged providers to steer patients to the defendant pharmacies to get their prescriptions approved.

6.      The Pharmacy Defendants created false records to conceal and avoid detection and repayment of overpayments by the Medicare, Medicaid, and TRICARE programs.

<u>**JURISDICTION AND VENUE**</u>

7.      This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and (b), and 28 U.S.C. §§ 1331, 1345.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## GOVERNMENT HEALTHCARE PROGRAMS

9.      Title XVIII of the Social Security Act, U.S.C. §§ 1395, *et seq.,* establishes the Health Insurance for the Aged and Disabled Program, known as the Medicare program. The Secretary of the United States Department of Health and Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS").

10.     Medicare Part D ("Prescription Drug Coverage") is a plan offered by private insurers approved by Medicare to provide basic insurance for prescription drugs. 42 U.S.C. §§ 1395w-101-w-154.

11.     Reimbursement for Medicare Part D claims is made by the United States through CMS.

12.     Part D Plan Sponsors are nongovernmental entities under contract with CMS to offer prescription drug benefits through Medicare Prescription Drug Plans, Medicare Advantage Prescription Drug Plans, Program of All-Inclusive Care for the Elderly plans, or cost plans offering qualified prescription drug coverage.

13.     Separate payments are made by the Plan Sponsors for each drug listed on the Medicare Part D claims.

14.     Medicare also reimburses pharmacies under a Part D Low Income Subsidy program on behalf of millions of low-income Medicare beneficiaries, many of whom are dually eligible for Medicare and Medicaid.

15.     As part of the enrollment process for the Medicare program, providers certify that they agree to abide by the Medicare laws, regulations, and program instructions and that they understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions.

16.     Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.*, establishes the Medicaid program, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. CMS administers Medicaid on the federal level. Within broad federal rules, however, each state decides who is eligible for Medicaid, the services covered, payment levels for services, and administrative and operational procedures.

17.     At all times relevant to this Complaint, the United States provided funds to the States through the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, *et seq.* Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered medical services under

the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.

18.     TRICARE is a government-funded program that provides medical benefits to retired members of the Uniformed Services and to spouses and children of active duty, retired, and deceased members, as well as reservists who were ordered to active duty for thirty (30) days or longer. The program is administered by the Department of Defense and funded by the federal government.

19.     Together, the programs described above, and any other government-funded healthcare programs, are referred to herein as "Government Insurance."

## ANTI-KICKBACK STATUTES

20.     The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), prohibits any person or entity from making or accepting "any remuneration" to induce or reward any person for, *inter alia*, referring, recommending, or arranging for the purchase of any item for which payment may be made under a federally-funded health care program. 42 U.S.C. § 1320a-7b(b). The statute's prohibition applies to both sides of an impermissible kickback relationship (i.e., the giver and the recipient of the kickback). By its terms, the statute prohibits kickbacks to those who themselves make referrals and purchases as well as those who recommend

that others make referrals or purchases and those who arrange those referrals and purchases. Thus, the AKS extends to arrangements with marketing and sales entities. *See* U.S. Dep't of Health and Human Services Office of Inspector General ("HHS-OIG"), Advisory Opinion 98-10 (Aug. 31, 1998) ("any compensation arrangement between a Seller and an independent sales agent for the purpose of selling health care items or services that are directly or indirectly reimbursable by a Federal health care program potentially implicates the anti-kickback statute.").

21.    Underscoring the breadth of the statutory definition, the HHS OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952, 35958 (1991), broadly define the term "remuneration" as "anything of value in any form or manner whatsoever." *See* HHS-OIG, OIG Compliance Program Guidance for Pharmaceutical Manufacturers, 66 Fed. Reg. 23731, 23734 (May 5, 2003); *accord U.S. ex rel. Fry v. The Health Alliance of Greater Cincinnati*, 2008 WL 5282139, at *7 (S.D. Ohio Dec. 18, 2008).

22.    A violation of the Anti-Kickback Statute presumptively establishes a False Claims Act violation, including materiality. *See U.S. ex rel. McFarland v. Fla. Pharmacy Sols.,* 358 F. Supp. 3d 1316, 1326 (M.D. Fla. 2017) (quoting 42 U.S.C. § 1320a-7b(g)); *see also Guilfoile v. Shields,* 913 F.3d 178, 190 (1st Cir. 2019); *U.S. ex*

*rel. Lutz v. BlueWave Healthcare Consultants, Inc.,* 853 F.3d 131, 135 (4th Cir. 2017).

23.    In addition to the AKS, TRICARE prohibits arrangements by providers "which appear to be designed primarily to overcharge" TRICARE, including commissions and kickbacks. *See* TRICARE regulations on fraud and abuse at 32 C.F.R. § 199.9(c)(12).

## PARTIES

24.    Until at least February 2022, Killian Hill Pharmacy, LLC operated Killian Hill Pharmacy ("Killian Hill"), a retail pharmacy at 1025 Killian Hill Rd. SW, Suite A, Lilburn, GA 30047.

25.    In February 2022, American Care Specialty, LLC was created to operate Killian Hill.

26.    Killian Hill is owned and operated by Defendants Sachinkumar "Sam" Patel and Neil Patel.

27.    Until at least April 2022, Neil was the supervising pharmacist at Killian Hill.

28.    Sam and Neil Patel also own Defendant Plus One Specialty LLC d/b/a Choice Specialty Pharmacy. Its principal address is Suite B of the same address as Killian Hill, but presently Killian Hill still operates in that space.

29.    The other pharmacies named as defendants are owned by Sam Patel.

30.     Defendant Newnan Plaza Pharmacy is located at 775 Poplar Rd #100, Newnan, GA 30265.

31.     Defendant Southside Pharmacy is located at 755 Mount Vernon Hwy, Ste. 450, Atlanta, GA 30328. Upon information and belief, Sam Patel has an ownership interest in other Southside Pharmacies in Texas.

32.     Defendant Express Food and Pharmacy 1 is located at 2111 Campbellton Rd SW, Atlanta, GA 30311.

33.     Defendant Express Food and Pharmacy 2 is located at 3685 Braselton Hwy, Ste. 101/102, Dacula, GA 30019.

34.     Defendant Express Food and Pharmacy 3 is located at 50 Upper Alabama St, Ste. 92, Atlanta, GA 30303.

35.     Defendant Eagle Pharmacy is located at 1029 Honey Creek Rd SE, Conyers, GA 30013.

36.     Defendant Prestige Pharmacy is located at 6375 McGinnis Ferry Road Suite 102, Johns Creek, GA 30005.

37.     Defendant Family Pharmacy is located at 206 N Cambridge St, Ninety Six, SC 29666.

38.     Defendants John Doe Pharmacies 1-20 are other pharmacies owned and/or operated by Sam and/or Neil Patel that are not specifically named as Defendants.

39.     For example, Sam Patel owns and operates other pharmacies throughout Georgia, as well as in Texas and Florida.

40.     Sam and Neil Patel are also opening a pharmacy at 257 Main St, Loganville, GA 30052 (the "Loganville Pharmacy").

41.     Sam Patel is also opening a pharmacy is being opened at 1098 Bermuda Run, Ste. 5, Statesboro, GA 30458.

42.     Sam Patel is also opening a pharmacy at 1571 Walton Way, Augusta, GA 30904, under the name Care Plus Specialty Pharmacy or Health Plus Pharmacy.

43.     Dhaval Patel is a pharmacy technician at Killian Hill who personally handles the billing for non-dispensed refills, enters false pick-up dates in case they are audited, even falsifying receipts to show auditors that patients paid their copayments, and prepares false medical histories for the preauthorization requests.

44.     Relator Richard Green, PharmD, began working for Killian Hill as a staff pharmacist in May 2021.

45.    John Doe Prior Authorization Company is a company founded by Sam Patel that obtains prior authorizations on behalf of providers for the drugs dispensed by the Pharmacy Defendants.

46.    WraSer, LLC d/b/a WraSer Pharmaceuticals ("WraSer") is located at 119 Marketridge Drive, Suite D, Ridgeland, MS 39157. It manufacturers Trezix, Nalfon, and Otovel, three expensive drugs commonly dispensed by the Pharmacy Defendants.

47.    Scilex Holding Company d/b/a SCILEX Pharmaceuticals, Inc. ("Scilex") is located at 4955 Directors Place, San Diego, CA 92121. It manufacturers ZTlido, an expensive drug commonly dispensed by the Pharmacy Defendants. Scilex is a nearly 100% majority-owned subsidiary of Sorrento Therapeutics, Inc.

## FACTUAL ALLEGATIONS

### A. Billing for Prescriptions Not Dispensed

48.    When Relator began working for Killian Hill in May 2021, it became quickly apparent that the pharmacy was defrauding the Government. He could see in the electronic records system that—dating back to at least July 2019—the pharmacy was routinely billing Government Insurance for prescription refills that were not dispensed to the patients.

*New Prescriptions*

49.     Most of Killian Hill's prescriptions come directly from providers, and, if it can confirm the patient wants the prescription and will pay the copayment, it ships the prescription to the patient.

50.     Alternatively, if the prescription has a $0 copay—either through the patient's insurance or a manufacturer's coupon—Killian Hill will automatically ship the prescription without authorization.

51.     If there is a copayment and Killian Hill cannot get authorization for payment, it simply bills the prescription to Government Insurance without sending it to the patient.

*Refills*

52.     This scheme also occurs with refills. If a prescription has refills, Killian Hill bills Government Insurance for the refills regardless of whether they are dispensed.

53.     This means that even when patients do not authorize and receive an initial prescription, or if they stop using a prescription, Killian Hill bills for the subsequent refills.

54.    Even when patients call the pharmacy and tell it they don't want the prescription, Killian Hill bills for the prescription and its refills, without actually filling the prescription.

55.    This is not an automatic process conducted by the pharmacy management software—PrimeRx. Rather, it requires a member of the pharmacy to manually enter the prescriptions and refills and to bill for them.

56.    PrimeRx allows the user to run a report to get a list of prescriptions that are billed but not shipped.

57.    When Relator ran a report showing the prescriptions that had been billed but not verified by a pharmacist (a requirement for any prescription actually dispensed at Killian Hill), he saw over $2 million in reimbursements by Medicare Part D, Georgia Medicaid, and TRICARE plans for non-dispensed drugs.

58.    Relator questioned Dhaval and Neil Patel about certain claims where drugs had not been dispensed and asked if he should reverse those claims. They both told Relator to leave the claims billed.

59.    Sam Patel told Relator not to worry about the aberrant billing or false prior authorizations (discussed below) because the insurance companies "don't really check or do anything" about it.

60.    Upon information and belief, because Sam and Neil Patel are responsible for implementing the policies for billing Government Insurance in this fashion, this same scheme occurs at their other pharmacies as well.

61.    At the very least, when made aware of this issue with the system, Killian Hill, Sam Patel, and Neil Patel knowingly and improperly avoided their obligation to repay the money to the Government.

*The Pharmacy Workflow Process for Billed, Not Filled, Refills*

62.    Technician Dhaval Patel is primarily responsible for the task of billing Government Insurance for prescription refills.

63.    Dhaval routinely bills whatever refills are due and available to be billed.

64.    Dhaval sometimes bills for the prescription in advance of it actually being dispensed (in those instances when it was actually dispensed).

65.    Generally, it is only when a patient's notes expressly state to not bill the patient's insurance (usually because they have called the pharmacy and complained about their insurance being billed) that Killian Hill does not bill for their refills.

66.    The prescription is billed to Government Insurance before the pharmacy calls the patient to find out if they will pay the copayment.

67.     Regardless of the answer, the claim—which has already been submitted—is not reversed unless a patient calls and complains.

68.     Killian Hill generally does not call the patient if (1) there is no copayment; (2) the copayment is being waived (discussed below); or (3) the patient has expressly stated they do not want the prescription. In those instances, the refills are billed to Government Insurance without authorization by the patients.

*Patient Examples*

69.     On February 18, 2022, the daughter of Medicare patient SD called Killian Hill about a prescription of ZTlido billed on her mother's insurance statement when they did not receive any medication from Killian Hill.

70.     On March 23, 2022, the wife of patient GE called and asked why Killian Hill had billed for medication it did not send in January, February, and March. She informed them that her husband had passed away in the first week of February.

71.     On February 12, 2022, patient SE emailed Killian Hill about a prescription that had been billed to her Cigna Part D plan that she had cancelled and that was never dispensed.

72.     Patient SA is a Medicare beneficiary. Killian Hill billed the patient's Medicare Part D plan $576.86 for a Repatha prescription, one initial fill and three

refills. Killian Hill was reimbursed $509.13 for each fill. Medicare Part D paid

$194.64 for the initial prescription (supposedly filled on September 28, 2021), and

$462.13 for refills supposedly filled on October 24, November 26, and December

22 that were not actually filled. The electronic records show that Killian Hill did

not ship the initial prescription, as evinced by it not being pharmacist verified

and there not being a pickup date listed. The EHR further indicates that none of

the three refills were shipped. In fact, the labels were not even printed.

73.     Patient TR is a Medicare beneficiary. This patient did receive an initial

prescription for Ztlido, which was billed on March 23, 2021 and shipped on

March 24, 2021. The notes in the patient's records indicate that on April 15, a

refill was approved, but that on April 17, the pharmacy was instructed not to fill

the prescription. Nevertheless, Killian Hill dispensed a refill on April 16 (billed

April 29) and again on May 24 (billed May 22). Killian Hill then billed for the

remaining three refills (June 15, July 9, and August 2) without dispensing the

prescription.

74.     Patient MB is a Medicare beneficiary. She was sent a prescription for

Nurtec on August 18, 2021, for which she paid a copay. Killian Hill failed to send

her first refill but billed for it anyway on September 10. Killian Hill did send her

"second" refill on October 5. Relator believes Killian Hill simply waived the

copay and sent the second refill. Killian Hill profited about $80 even after waiving the copay. Neil Patel initialed the pharmacist verification for the order. On October 13, staff made a note not to send her any more Nurtec, but Killian Hill billed for the remaining three refills without sending them.

75.    Patient JE's Aetna Medicare Part D plan was billed $1,460.50 for a prescription that the patient indicated he did not want.

76.    Patient BC is a Georgia Medicaid beneficiary who was prescribed Aimovig, a subcutaneous injection that has to be kept refrigerated. BC's address is a PO Box, which would not even accept refrigerated packages. Killian Hill has never sent this prescription, but it has billed Medicaid four times for $617.46 each time, and it was reimbursed in this amount. Even though patient BC was not receiving the medication from Killian Hill, Dr. Kashyap Patel, a close friend of Neil Patel's, sent another prescription with three refills.

**B. Falsifying Medical Histories to Obtain Prior Authorizations**

77.    The Pharmacy Defendants employ a sales representative and contract with Branded Med LLC to market their services to providers.

78.    Volume-based commissions paid by a pharmacy to independent marketing company representatives violate the Anti-Kickback Statute and taint

the resulting claims for reimbursement for prescriptions ordered by providers they recruit.

79.     One benefit that the Pharmacy Defendants offer, and specifically market, is that they will obtain the prior authorizations for the providers.

80.     Prior authorizations are a time-consuming and difficult process, and so performing this task on behalf of the prescribing providers constitutes a kickback by the pharmacy to the providers, who are more likely to utilize the pharmacy that does their work for them.

81.     Prior authorizations for expensive prescriptions are often contingent upon the patients having tried other, cheaper, prescriptions before they qualify for these prescriptions.

82.     The Pharmacy Defendants submit prior authorization requests—written as if they were being sent by the provider—that falsely indicate the patient "tried and failed" these other drugs.

83.     Some providers do not even submit to Killian Hill the records necessary to support medical necessity or patient histories necessary to establish they qualify for a prior authorization.

84.    There is a template that employee Dhaval Patel uses to obtain the prior authorizations. He copies and pastes the language directly into the prior authorization request, generally changing only the dates.

85.    Dhaval Patel was actively involved in preparing and maintaining the template.

86.    In other instances, Dhaval Patel has called insurance and claimed to have been working for the prescribing physician.

87.    Relator saw him call Georgia Medicaid and falsely state he worked for Dr. Kashyap Patel when trying to obtain a prior authorization.

88.    For example, Dhaval Patel falsified a prior authorization request for Georgia Medicaid beneficiary RB, falsely signed as being prepared by Dr. Kashyap Patel, which identified the various treatments that had failed to help her migraines. Medicaid approved the prescription and paid $856.95 for each of four separate claims filed between October 20, 2021 and January 11, 2022.

89.    As a result of the false statements in its prior authorization requests, Killian Hill has an unusually high success rate in getting prior authorizations approved.

90.    In early 2022, the John Doe Prior Authorization Company was formed to perform the prior authorization scheme described above in a centralized location on behalf of many of the Pharmacy Defendants, including Killian Hill.

91.    Dhaval Patel continues to perform this scheme at the John Doe Prior Authorization Company's office.

*The Drug Manufacturer Defendants are Encouraging and Incentivizing this Scheme*

92.    Sales reps for the drugs Killian Hill dispenses the most are intimately familiar with Killian Hill's prior authorization approval/denial rates.

93.    Neil Patel provides monthly billing reports to the sales representatives for WraSer (drugs Trezix, Nalfon, and Otovel) and Scilex (drug ZTlido) to show how much Killian Hill has billed for their products.

94.    Because Killian Hill is so successful in getting prior authorizations approved, the reps encourage providers to use Killian Hill.

95.    Some reps have mentioned in Relator's presence that some of their prescribers were having difficulty getting prior authorizations through other pharmacies, and so they were directing those providers to Killian Hill.

96.    In some instances, the sales representatives give the Pharmacy Defendants contact information for providers that use their products so that the Pharmacy Defendants can market to them.

97.    Many of the prescriptions for the WraSer and Scilex products, in particular, come from the same few physicians.

98.    Express Scripts recently informed Killian Hill that just three prescribers make up 22% of Killian Hill's paid claims, and that 43% of the paid claims were for just three drugs, which require prior authorizations.

99.    The sales reps regularly stop by the pharmacy to inquire if specific prescribers have been sending in prescriptions for their products and to see if they had any issues getting prior authorizations.

100.    The sales reps are also familiar with Killian Hill's standard practice of waiving copayments and/or, in the case of WraSer, permitting copayment coupons for Government beneficiaries (discussed below).

101.    Relator has often heard patients comment along the lines of "my doctor told me I have to use your pharmacy" and "my doctor said this would be free at your pharmacy" after receiving a prescription for one of these products.

102.    The sales reps—including for WraSer and Scilex—provide catered lunches to the staff at Killian Hill as a reward for getting so many prescriptions filled.

103.    The DOJ recently settled False Claims Act allegations with a drug

manufacturer[1] and pharmacies[2] for similar conduct as that described above,

evincing the materiality of these violations.

*Transferring Prescriptions to Avoid Exclusions*

104.    Effective January 20, 2022, Killian Hill may no longer bill prescriptions to

Humana plans.

105.    Upon information and belief, Humana excluded Killian Hill because it was

falsifying prior authorizations.

106.    To get around this exclusion, Killian Hill simply transfers the prescriptions

to Newnan Plaza Pharmacy—also owned by Sam Patel—and it plans to transfer

them to the Loganville Pharmacy when it is open.

107.    Killian Hill also recently learned that it would be losing its CVS Caremark

contract in May 2022.

---

[1] *Kaléo Inc. Agrees to Pay $12.7 Million to Resolve Allegations of False Claims for Anti-Overdose Drug*, DEPARTMENT OF JUSTICE OFFICE OF PUBLIC AFFAIRS (Nov. 9, 2021), https://www.justice.gov/opa/pr/kal-o-inc-agrees-pay-127-million-resolve-allegations-false-claims-anti-overdose-drug

[2] *Pharmacist and Two Pharmacies Agree to Pay $1 Million to Resolve Allegations of False Claims for Anti-Overdose Drug*, DEPARTMENT OF JUSTICE OFFICE OF PUBLIC AFFAIRS (Dec. 8, 2021), https://www.justice.gov/opa/pr/pharmacist-and-two-pharmacies-agree-pay-1-million-resolve-allegations-false-claims-anti

108.    The Patels are transferring Killian Hill from Killian Hill Pharmacy, LLC to American Care Specialty, LLC, which is registered in Dhaval Patel's mother's name, to get around these exclusions.

109.    Similarly, on February 2 and 3, 2022, Southside Pharmacy transferred more than 50 prescriptions to Killian Hill—some for high-cost specialty medications that Relator has never dispensed at Killian Hill—some with another 50 or more coming in since.

110.    Upon information and belief, this transfer occurred to get around UnitedHealthcare terminating its contract with Southside Pharmacy.

111.    When WellCare and Envolve contacted Killian Hill about the excessive number of prescriptions dispensed with prior authorizations, Sam Patel sent them a letter falsely stating that Killian Hill "will no longer assist in submission of any prior authorization for any health plan." This was a false statement—Killian Hill still routinely performed prior authorizations after this letter was sent.

112.    Sam Patel is in the process of creating a new business for the sole purpose of obtaining prior authorizations for physicians ordering prescriptions from his pharmacies.

113.    Relator has heard discussions that providers will sign a contract with the new business and provide it with their CoverMyMeds login information so that it appears that the prior authorizations are being submitted directly from the doctor's offices.

### C. Waiving Copayments for Government Beneficiaries

114.    Routine copayment waivers are kickbacks to Government beneficiaries that violate the Anti-Kickback Statute, thereby rendering the resulting claims for those products false.

115.    These waivers can also constitute kickbacks to the pharmaceutical manufacturers, who are incentivized to encourage prescribing providers to send their prescriptions to the pharmacy because they are more likely to be filled if the beneficiary does not have to pay a copayment.

116.    Killian Hill routinely waives copayments for Government beneficiaries whenever (a) the copayment was $9.85 or less, or (b) where the pharmacy would still make a profit on the prescription even after waiving the copayment.

117.    This direction came from Sam and Neil Patel, and so, upon information and belief, this copayment waiver is occurring at their other pharmacies as well.

118.    The Pharmacy Defendants' primary reason for waiving the copayment is that it saves them a lot of work of having to call the patients for every refill.

Waiving the copayment and automatically sending a prescription is considerably more efficient.

119.    The scheme also avoids rejections by patients who are not willing to pay even a small amount for prescriptions they don't really need—which is CMS's purpose in requiring a copayment in the first place.

120.    The Pharmacy Defendants have actual knowledge that it is improper and material to waive copayments for Government beneficiaries.

121.    For example, in the summer of 2021, a Part D insurer contacted Killian Hill about a prescription or ZTlido that had been shipped to the patient with a waived copayment. The patient was not aware that the copayment had been waived, and she was concerned that she would be asked to pay it. Neil Patel and Dhaval Patel recognized that they could not tell the insurer that they had waived the copayment, so they instead told it that it was shipped "on accident."

122.    Prior to about July 2021, Killian Hill was also routinely using copayment coupons for Government beneficiaries. Then, Eli Lilly (who manufactures Emgality, a major product for the pharmacies) caught on to this practice and revoked Killian Hill's privileges to use the copayment cards for any customers.

123.    Since then, Killian Hill has continued to apply copayment coupons for Xspire and WraSer products, and these manufacturers, in turn, accept the

coupons for Government beneficiaries and reimburse Killian Hill for the copayments.

124.    The Pharmacy Defendants also, of course, do not collect copayments for prescriptions they bill but do not send.

125.    In the meantime, the Pharmacy Defendants have implemented workarounds to avoid the Eli Lilly prohibition, including transferring Eli Lilly prescriptions to a different Pharmacy Defendant and changing the corporate entity for Killian Hill to American Care Specialty, LLC.

**D. Insurance Audits**

126.    Relator is aware of at least five audits of Killian Hill—conducted by Elixir in October 2021, OptumRx Part D in November 2021, OptumRx Part D again in February 2022, Express Scripts in February 2022, and SilverScript at an unknown date—where Killian Hill submitted false information to pass the audit. These audits addressed multiple issues, including those discussed above.

127.    When Killian Hill received notice of the Express Scripts audit, Relator overheard a phone conversation between Neil Patel and Dhaval Patel wherein Neil said he would "call the doctors to tell them what to say."

128.    Relator witnessed Dhaval Patel use a PDF editor to falsify receipts to show that patients paid the copayment for drugs that were never actually dispensed.

129.    These false records and statements made to avoid repayment to Medicare Part D plans constitute a violation of 31 U.S.C. § 3729(a)(1)(G).

130.    As the entire purpose of the audits is to discover overpayments which may then be recouped, the false records—created to avoid these very repayments—are material to these obligations.

131.    The materiality is further evinced by the various insurance companies that have excluded Killian Hill and other pharmacies owned by Sam Patel from their plans after discovering these improprieties.

### COUNT I
### VIOLATIONS OF 31 U.S.C. § 3729 - FEDERAL FALSE CLAIMS ACT
### (The Pharmacy Defendants)

132.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

133.    As set forth above, the Pharmacy Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

134.    As set forth above, the Pharmacy Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

135.    As set forth above, the Pharmacy Defendants knowingly conspired to commit violations of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

136.    As set forth above, the Pharmacy Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government concealed, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

137.    Due to the Pharmacy Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

138.    Relator is entitled to reasonable attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT II
## VIOLATIONS OF GA. CODE ANN.  § 49-4-168.1 - GEORGIA FALSE MEDICAID CLAIMS ACT
### (The Pharmacy Defendants)

139.    Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

140.    As set forth above, the Pharmacy Defendants knowingly presented or caused to be presented to the Georgia Medicaid program false or fraudulent claims for payment or approval, in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

141.    As set forth above, the Pharmacy Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

142.    As set forth above, the Pharmacy Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of Ga. Code Ann. § 49-4-168.1(a)(3).

143.    As set forth above, the Pharmacy Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government concealed, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government in violation of Ga. Code Ann. § 49-4-168.1(a)(7).

144.    Due to the Pharmacy Defendants' conduct, the State of Georgia has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Ga. Code Ann. § 49-4-168.1.

145.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. Ga.

Code Ann. § 49-4-168.2(i).

**COUNT III**
**VIOLATIONS OF 31 U.S.C. § 3729 - FEDERAL FALSE CLAIMS ACT**
**(The Drug Manufacturer Defendants)**

146.    Relator hereby incorporates and realleges herein paragraphs 1-47 and 77-

123 as if fully set forth herein.

147.    As set forth above, the Drug Manufacturer Defendants knowingly caused

to be presented false or fraudulent claims for payment or approval, in violation

of 31 U.S.C. § 3729(a)(1)(A).

148.    As set forth above, the Drug Manufacturer Defendants knowingly caused

to be made or used, false records or statements material to numerous false

claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

149.    As set forth above, the Drug Manufacturer Defendants knowingly

conspired to commit violations of the False Claims Act, in violation of 31 U.S.C. §

3729(a)(1)(C).

150.    Due to the Drug Manufacturer Defendants' conduct, the United States

Government has suffered substantial monetary damages and is entitled to

recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

151.    Relator is entitled to reasonable attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d)(1).

### COUNT IV
### VIOLATIONS OF GA. CODE ANN. § 49-4-168.1 - GEORGIA FALSE MEDICAID CLAIMS ACT
### (The Drug Manufacturer Defendants)

152.    Relator hereby incorporates and realleges herein paragraphs 1-47 and 77-123 as if fully set forth herein.

153.    As set forth above, the Drug Manufacturer Defendants knowingly presented or caused to be presented to the Georgia Medicaid program false or fraudulent claims for payment or approval, in violation of Ga. Code Ann. § 49-4-168.1(a)(1).

154.    As set forth above, the Drug Manufacturer Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

155.    As set forth above, the Drug Manufacturer Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of Ga. Code Ann. § 49-4-168.1(a)(3).

156.    Due to the Drug Manufacturer Defendants' conduct, the State of Georgia has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. Ga. Code Ann. § 49-4-168.1.

157.    Relator is entitled to reasonable attorneys' fees, costs, and expenses. Ga.

Code Ann. § 49-4-168.2(i).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

    (a) awarding the United States and State of Georgia treble damages

       sustained by them for each of the false claims;

    (b) awarding the United States and State of Georgia the maximum civil

       penalty for each of the false claims, records, and statements;

    (c) awarding Relator the maximum relator's share from the proceeds of

       this action and any alternate remedy or the settlement of any such

       claim;

    (d) awarding Relator litigation costs, expenses, and reasonable

       attorneys' fees; and

    (e) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Jason Marcus*
Julie Bracker
Georgia Bar No. 073803
Jason Marcus
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, GA 30326

Telephone:  (770) 988-5035
Facsimile:  (678) 648-5544
Julie@fcacounsel.com
Jason@fcacounsel.com